[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
AMENDED MEMORANDUM OF DECISION
This is an action, returnable March 9, 1993 for a dissolution of marriage and other relief brought by the plaintiff wife against the defendant husband.
The parties were married at Greenwich, Connecticut on November 22, 1985. There are two minor children, issue of this marriage, namely Lauren Paige Lockett, now age seven, born on February 22, 1987 and Scott Hobart Lockett, Jr. now age three, born on May 21, 1991.
The plaintiff whose date of birth is February 5, 1958 is presently thirty-six years of age. She appears to enjoy good health. She attended college for three years and an additional two years at Culinary School. She obtained an associates degree in occupational science. The plaintiff has been employed by the Town of Greenwich since September, 1985 in the school lunch program. At the present time, she is supervisor of the lunch program for all kindergarten and elementary grades in its various schools. She works only during the school year and her hours are generally from approximately 6:30 a.m. to approximately 2:30 p.m. CT Page 9862 Monday through Friday. She engages a "nanny" to assist her in taking care of the children and home.
The defendant whose date of birth is May 7, 1952, is forty-two years of age. He appears to enjoy good health. The defendant has been employed since 1967 for General Reinsurance Company or one of its subsidiaries in either an underwriting or sales capacity. He is currently second vice-president of the General Star Management Company, a division of General Reinsurance Company and works in its Hartford, Connecticut office. The defendant's base salary is $90,000.00 per year. In addition, the defendant also receives a bonus which has ranged from $28,000.00 to $30,000.00 (gross) over the last several years. The defendant also is entitled to various generous employee benefits, such as savings plans and stock options.
The parties dated for approximately eleven months prior to their marriage in 1985. Although the plaintiff was employed in New York City, she relocated to Connecticut in August or September of 1985 to be near the defendant who was then working for General Reinsurance at its Stamford headquarters. Fortunately, in September 1985, she became gainfully employed with the Town of Greenwich. Although it would appear that the marriage was stable in the beginning, there were many subtle factors that were contributing to the erosion which ultimately led to its irretrievable breakdown.
Although the parties were engaged less than one month, the defendant then insisted on a small quick marriage at the Greenwich Town Hall. Although the plaintiff wanted a big wedding, she capitulated to the defendant's request. This incident may be the first signs of the defendant's never ending attempts to dominate the plaintiff in many respects, including financially, emotionally and socially. The defendant insisted that the plaintiff work full time which she did throughout her marriage with the exception of two short periods of time during which their children were born. The defendant precluded the parties from having a joint checking account. In fact, he insisted that the plaintiff's paycheck be turned over to him directly and/or directly deposited to an account maintained solely by him. The plaintiff was allowed to keep approximately $100.00 for groceries and the defendant paid all the other family bills. In addition, the plaintiff was required to account to the defendant for all her spending. The defendant was penurious towards the plaintiff and this attitude continues to the present. CT Page 9863
The plaintiff was the primary caretaker for the children. The defendant did very little towards their day to day care and upbringing. In fact at times, when the plaintiff was away from the home while the defendant was present at home, he insisted that the plaintiff engage a baby sitter rather then he baby sit for his own children. The defendant's attitude was that his job was more important and that although the plaintiff was also working full time, it was her responsibility to take care of their children and as a result the defendant did very little towards caring for the children, helping out in the home or doing his fair share around the house. The family dinner arrangements at the home borders on the ludicrous. The plaintiff was required to have dinner with herself and children in the kitchen while the defendant insisted that he be served on the porch and/or the den. Again, the plaintiff capitulated and permitted the defendant to assert his domineering attitude.
It also appears that the defendant was adversely affected by an inclination towards gambling and sustained losses beyond his reasonable financial ability to accommodate such losses. These losses detrimentally affected the family in several ways including financially, socially and emotionally. The defendant was unfaithful on an admitted one occasion during their marriage but believes by reason of his admitting the same, that it should be forgiven. Whether it should be forgiven or not is determined by the plaintiff, not this court. The court does recognize that the plaintiff believes that this indiscretion, going to the very heart of the marriage, hurt the plaintiff very much. All in all, the defendant's attitude towards the plaintiff was very denigrating and demeaning. In addition, the defendant took advantage of the plaintiff's attempts to keep the marriage intact despite the defendant's mean and selfish and domineering attitude. The court concludes that the defendant and his attitude toward the plaintiff and their family, is solely responsible for the irretrievable breakdown of this marriage.
In determining the proper orders in this case, the court must consider the factors set forth in Connecticut General Statutes46b-81, 46b-82, 46b-84, and 46b-62 of the Connecticut General Statutes. With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows: CT Page 9864
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a material dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
In the recent case of Blake v. Blake, 207 Conn. 217 at 230 (1988), our Supreme Court cited with approval the language ofO'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988), in which our Appellate Court stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
As has been said by the Appellate Court in the recent case ofEmanuelson v. Emanuelson, 26 Conn. App. 527, 530 531 (1992); "General Statutes § 46b-81 (c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v.CT Page 9865O'Neill, 207 Conn. 806, 540 A.2d 374 (1988). . . .
The statutory factors for determining alimony in § 46b-82
are almost identical to the factors used to distribute property in § 46b-81 (c)."
The court has considered all of the criteria of §§ 46b-81, 46b-82
and 46b-62 of the General Statutes and all of the evidence and the case law. Since "[it] would serve no useful purpose to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1992).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v.Perry, 4 Conn. App. 307, 313-14 (1991).
The court, in addition to the findings noted herein, finds as follows:
1. There is requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff and the defendant shall have joint legal custody of the two minor children. The children's principal residence shall be with the plaintiff mother. That parenting agreement entered into the eighteenth day of February 1994, by and between the parties hereto is hereby accepted and approved by this court and the court finds that said parenting agreement is in the best interest of the children and orders that the terms thereof are made orders of this court and said parenting CT Page 9866 agreement may be incorporated by reference in the judgment file.
3. The defendant husband shall pay to the plaintiff wife, the sum of $25,000.00 per year as child support for the two minor children. Such child support shall be paid in equal payments on the first and fifteenth day of each month. Child support for and on behalf of each child shall continue until the child completes high school or attains age nineteen whichever is sooner.
4. The plaintiff wife shall provide medical/dental insurance for and on behalf of the minor children as provided through her employment. In the event there is any cost to the plaintiff associated with such medical/dental insurance, such cost will be divided equally between the parties. In addition, the parties shall share equally any unreimbursed and/or uncovered medical and dental expenses, including deductibles incurred by or on behalf of the minor children.
5. The court orders that the real estate identified as 47 Idlewood Drive, Stamford, Connecticut, be retained in joint tenancy, without rights of survivorship. The court orders that the real estate be placed on the market for sale as reasonably soon as possible. The plaintiff shall be solely responsible for selling said real estate and shall solely select a real estate agent, solely agree to the terms of a listing agreement, shall solely determine a listing price, shall solely determine a sale price and shall solely determine sales terms. The court shall retain jurisdiction over the sale of the real estate identified as 47 Idlewood Drive, Stamford, Connecticut.
In the event there are any proceeds of sale after the deduction of usual and necessary expenses of sales, including but not limited to real estate commission, conveyance taxes, attorney's fees, etc., such proceeds shall be divided equally. Likewise, in the event there is any deficit relative to the sale of said premises, such deficit shall be divided equally among the parties.
The court contemplates that the wife shall make the necessary mortgage payments, homeowner's insurance, taxes, etc., and therefore, the court orders that any adjustments of prepaid expenses shall be reimbursed to the plaintiff wife prior to determining any proceeds of sale or deficit relative to the sale of the subject premises. CT Page 9867
6. The wife shall retain the Fleet Bank account, credit union account and IRA's all as shown on her financial affidavits dated March 1, 1994 and February 17, 1994 free of any claim by the defendant.
7. As regards the defendant's stock options through the General Reinsurance Company, the court finds that 3,930 stock options are available to the defendant; 2,310 of which are presently vested and 1,620 which shall become vested in subsequent years. These stock options shall be divided equally between the parties and the plaintiff shall acquire a 50% interest therein. The defendant is ordered to redeem all vested options as reasonably soon as possible and the net proceeds thereof (after deducting both federal and state taxes in appropriate amounts), shall be divided equally between the plaintiff and the defendant. Further, one-half of the 1620 unvested options are ordered to be sold by the defendant at a time requested by the plaintiff after they vest. Again, the net proceeds thereof (after deducting both federal and state tax in appropriate amounts deducted), will be divided equally.
The defendant shall be entitled to retain to his credit all sums deducted from the gross proceeds of sale for federal and state income purposes but shall give to the plaintiff an amount equal to one-half of all such sums deducted from the gross proceeds of sale for said federal and state income tax purposes.
Any stock options granted after the date of this judgment shall belong to the defendant free of any claim by the plaintiff.
8. As regards the defendant's interest in the General Reinsurance Savings Plan, the court orders a Qualified Domestic Relations Order rolling over 60% of this account from the defendant to the plaintiff. The court shall retain jurisdiction over the form, fashion and style of the Qualified Domestic Relations Order.
9. Each party shall retain all their right, title and interest in and to their respective retirement plans, free and clear from any claim from the other party.
10. The wife shall retain her 1993 Toyota Camry free of any claim by the defendant. However, the wife shall assume responsibility for the loan thereon and shall hold defendant husband harmless therefrom. CT Page 9868
11. All household furniture and fixtures and furnishings are divided in accordance with that letter dated December 8, 1983 from Lacey Bernier of the Family Services Unit at the Superior Court in Stamford, subject to the family room teak coffee table which has been corrected so that the plaintiff retains said teak coffee table. The parties are further ordered to divide any other furniture, fixtures, furnishings and personal property to their mutual satisfaction. In the event they are unable to do so, the same is referred to Family Services Unit for further discussion. In the event the Family Services Unit is unable to resolve any further conflict, the Superior Court shall retain jurisdiction over the division of personal property.
12. The plaintiff shall retain all her jewelry and furs and other items of a personal nature such as clothing, etc. without claim by the defendant. Likewise, the defendant shall retain all his clothing and jewelry without claim by the plaintiff.
13. The defendant shall retain all interest to the accumulated frequent flyer miles free of any claim by the plaintiff.
14. The defendant shall retain the 1989 Ford as shown on his financial affidavit free of any claim by the plaintiff.
15. The defendant shall retain all right, title and interest to the Fleet Bank checking account and Fleet checking account as shown on the defendant's financial affidavit.
16. The defendant shall retain his stamp collection free of any claim by the plaintiff.
17. The defendant shall retain his shares of General Reinsurance Corporation free of any claim by the plaintiff.
18. The defendant is ordered to pay to the plaintiff, the sum of $20,000.00 per year as periodic alimony, which alimony payments will be made in the equal amounts on the first and fifteenth day of each month hereafter. The payment of periodic alimony shall terminate upon any of the following events whichever occurs earliest.
a. death of the defendant; CT Page 9869
b. death of the plaintiff;
c. the plaintiff's remarriage; or
d. cohabitation by the plaintiff with an unrelated male under the provisions of § 46b-86 (b) of the Connecticut General Statutes;
e. nine years.
The court finds that time limited alimony is justified in this particular case because the plaintiff is unable at this time to maximize her self-sufficiency during their children's child rearing ages. The plaintiff's full-time employment is presently limited to the hours of the day when her children are in school and therefore this is a further limiting factor on her ability to gain or attempts to gain more income than under the present circumstances. In nine years, the minor children will be sixteen and twelve years of age and will require less immediate attention and able to be by themselves and take care of themselves for short periods of time.
19. The defendant shall retain all right, title and interest to the life insurance as shown his financial affidavit.
20. The defendant is ordered to provide $300,000.00 of term life insurance naming the plaintiff wife as beneficiary for the benefit of the parties minor children. The defendant shall maintain such life insurance for so long as he is obligated to provide support hereunder.
21. The wife shall maintain term life insurance in the amount of $100,000.00 naming the defendant as beneficiary for and on behalf of the minor children. The plaintiff shall maintain such life insurance for so long as she is obligated to provide support for said minor children.
22. The parties stipulated that the defendant received a bonus on or about March 1, 1994 in the gross amount of $28,000.00. By way of property settlement the defendant is ordered to set over to the plaintiff, the sum of $5,000.00 and further the defendant shall retain the balance of the net bonus.
In the event the defendant receives any bonus in excess of $30,000.00 gross during the time which the defendant is obligated to pay alimony to the plaintiff, the defendant shall pay to the CT Page 9870 plaintiff 50% of any bonus money in excess of $30,000.00. By way of illustration and not by way of limitation assume that the defendant receives a bonus of $35,000.00 gross. In such event, the defendant shall retain the gross sum of $32,250 and pay to the plaintiff the sum of $2,500.00; being 50% of those monies in excess of $30,000.00. The court intends that any monies paid to the plaintiff hereunder shall be considered periodic alimony and therefore, income includible [includable] by the plaintiff and income deductible by the defendant.
23. Byway of property settlement, the defendant is ordered to pay to the plaintiff the sum of $10,000.00; $5,000.00 of which shall be paid on or before October 1, 1994 and $5,000.00 of which shall be paid on or before March 1, 1995.
24. The court orders a contingent wage execution.
25. The husband shall be entitled to take both children as income tax exemptions.
26. As regards any and all assets including monies, funds, stocks custodial accounts, bonds, etc., held by either of the parties for the benefit of the children the parties are ordered to marshall [marshal] all such assets and maintain and register such assets in such form and style as joint tenants for the benefit of their minor children. The parties are ordered to cooperate as regards using or spending of such assets provided such using or spending of such assets shall be for the sole benefit of the minor children. The court will retain continuing jurisdiction over this matter. In the event of any dispute, the parties shall by appropriate motion, seek advice from the court.
MORAN, J.